DAVID I. SCOTT
3601 FAIRBANKS AV #C-44
YAKIMA, WA 98902-6373
TEL: (509) 469-9517
Pro Se for Plaintiff

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID I. SCOTT | **1:14-CV-3141-TOR** |
| Plaintiff, | ) CIVIL NO. _____ |
| | ) |
| Vs. | ) COMPLAINT; DEMAND |
| | ) FOR JURY TRIAL and |
| | ) CERTIFICATE OF SERVICE |
| MACY'S, INC.; CITIGROUP, INC; | ) |
| EXPERIAN CORPORATION, et al and | ) |
| Partnerships, Corporations and/or other entities | ) |
| 1-100 | ) |
| | ) |
| Defendants. | ) |
| | ) |

<u>COMPLAINT</u>

COMES NOW Plaintiff, DAVID I. SCOTT, (hereinafter "Plaintiff" or "Scott"),

in his capacity as Pro Se, and in the cause(s) of action against the above-named

defendants, (hereinafter referred to collectively as "Defendants" or as MACY'S,

INC., DSNB MACY'S or for the sake of brevity "Macy's" or as otherwise

RECEIVED

OCT - 2 2014

CLERK, US DISTRICT COURT
YAKIMA, WASHINGTON

individually named, alleges as follows:

1. PLAINTIFF is and was at all times pertinent hereto a resident of the City and County of Yakima in the State of Washington.

2. DEFENDANT, DSNB MACY'S, INC. is a wholly owned subsidiary of CITIGROUP, INC. and the issuer of the Macy's credit card and whose corporate offices are located at 7 West Seventh Street Cincinnati, Ohio 45202.

3. DEFENDANT, CITIGROUP, INC. is the parent company of DSNB Macy's whose corporate offices are located at 399 Park Avenue, Manhattan, New York 10043.

4. DEFENDANT, EXPERIAN CORPORATION ("Experian") is a Credit Reporting Agency (CRA) whose corporate offices are located at 955 American Lane, Shaumburg, Illinois 60173.

5. Defendants individually and/or collectively offer financial and/or credit services and are governed by and subject to all rules, laws and Acts of Congress appertaining to companies engaged in interstate commerce as provided for in the Constitution of the United States of America and other laws enacted in furtherance thereof and are additionally subject to the laws of the states of New York, Ohio, Illinois, Delaware and/or Washington and any other state laws relevant to this action under the doctrine of pendant jurisdiction pursuant to 28 U.S.C. §1367.

6. The relevant federal rules, laws or Acts include, but are not necessarily

limited to, those found in the U. S. Constitution and Amendments thereto; the Truth In Lending Act, as amended (TILA), 15 U.S.C. §1601, et seq; the Fair Credit Billing Act (FCBA), 15 U.S.C. §1666-1666j; the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, et seq.; Fair and Accurate Credit Transactions Act of 2003 ("FACT Act") and the Credit Card Accountability Responsibility and Disclosure Act ("CARD Act") of 2009 as well as those enumerated in guidelines formulated by the Federal Trade Commission (FTC), the Securities Exchange Commission (SEC) and/or other Federal or state regulatory agencies that may by law oversee activities of the Defendants in the instant civil action and *the common law of contracts*.

7. DEFENDANT MACY'S, INC. or DSNB MACY'S is sued by name as the issuer of the Macy's American Express branded card and the entity administering the Macy's American Express account associated with Plaintiff Scott which account is the subject of actionable claims described in this civil action.

8. DEFENDANT CITIGROUP, INC. is sued by name as the parent company of DSNB MACY'S whose policies and procedures may in some way dictate or influence the policy and procedures utilized by DSNB MACY'S in the ordinary course of business and which policies and procedures may be the proximate cause of damages suffered by Scott.

9. DEFENDANT EXPERIAN CORPORATION is sued by name as its acts and

omissions including but not necessarily limited to publication of negative information after Scott sent them proof that the information should be deleted pursuant to 15 U.S.C. §1681, et seq (FCRA) were the proximate source of harm to Scott's credit rating, embarrassment and loss of standing in the community which information contributed to an increased APR imposed by other creditors whose APR is tied to a consumer's credit rating.

10. All allegations in this Complaint are thus made both individually and collectively against these named and any other unnamed defendant(s) heretofore and/or elsewhere herein referred to as et al defendants.

## PRELIMINARY STATEMENT

11. This action arises under the banking and credit laws of the United States of America and in particular but not limited to those under the Truth in Lending Act ("TILA") as amended, 15 U.S.C. §1601, et seq; the Fair Credit Billing Act ("FCBA") 15 U.S.C. §1666-1666j and provisions of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. 1681, et seq; Fair and Accurate Credit Transactions Act ("FACT Act") of 2003 and the Credit Card Accountability and Responsibility Act ("CARD Act") which are Acts of Congress as well as the *Common Law of Contracts*. Plaintiff Scott alleges inter alia…

12. That given the understanding that Public Law 111-24-May 22, 2009 amended TILA to *prohibit universal default* and that Scott had used his Macy's

American Express® card in a responsible way, the fact that Macy's used its greater power under the cardholder agreement (a contract of adhesion) in a punitive manner after learning of Scott's default with another lender is a direct violation of both the letter and the spirit of this legislative prohibition.

13.  That Scott had a right, under the aforementioned Acts of Congress as well as pursuant to the general assumption under the *Common Law of Contracts* that Defendants would act in good faith and deal fairly without using shifty means to avoid their obligations, denying Scott privileges he understood the cardholder agreement granted him or hanging their hat on broad language in the cardholder agreement to allow them to use technical excuses to otherwise breach the contract. Defendants were required inter alia to respond to Scott's **letters of dispute** in both a timely manner and consistent with other provisions of these statutes and to refrain from acts prohibited therein and that both the acts and omissions of Defendants in violation of the provisions of these Acts were the proximate cause of harm to Scott.

14.  That the foregoing acts and/or omissions of Defendants as well as any others that may be enumerated in the factual allegations and causes of action that follow constitute an actionable Tort under the Law of Contracts for Breach of Contract and specifically that they violate the Statement of Contracts 2nd by *frustrating Scott's principal purpose* of the unfettered use of his lines of credit

which he should have been able to enjoy pursuant to the cardholder agreement as long as he complied with the terms of the cardholder agreement which he had done at all times prior to the initiation of these acts and omissions.

15. That these acts and omissions have unreasonably burdened Plaintiff Scott economically, socially, emotionally and psychologically and have further constrained him to seek redress in a legal forum, thus exacerbating these same conditions.

## JURISDICTION

16. Plaintiff alleges an action for damages for Breach of Contract and for violations of the Truth in Lending Act (TILA) as amended, 15 U.S.C. §1601, et seq., and in particular, the Fair Credit Billing Act (FCBA), 15 U.S.C. §1666-1666j; the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, et seq., the Fair and Accurate Credit Transactions Act of 2003 ("FACT Act") and the Credit Card Accountability and Responsibility Act ("CARD Act") which are Acts of Congress.

17. Jurisdiction is conferred on this Court by 28 U.S.C. §1331 and/or §1332 and any State causes of action through principals of pendant jurisdiction pursuant to 28 U.S.C. §1367.

18. Plaintiff's claims for declarative and injunctive relief are authorized by 28 U.S.C. §2201 and §2202 and by rules 54, 57, and 65 of the Federal Rules of Civil Procedure.

VENUE

19. The events material to the allegations herein set forth and by which Scott

suffered damages as a result of Defendants' actions and omissions, occurred while

Scott was a resident of the City and County of Yakima, State of Washington, a

municipality situate in the Eastern District of Washington:

Venue therefore lies with this court pursuant to 28 U.S.C. §1391(e) generally

and/or §1391(e)(3).

PARTIES

RECITALS:

20. Plaintiff, DAVID I. SCOTT ("Scott"), is and was at all times relevant to the

allegations herein, a citizen of the United States of America, with all rights

appertaining thereto, and in particular a resident of the State of Washington,

maintaining a domiciliary in the City and County of Yakima.

21. Defendant, MACY'S, INC. ("Macy's") was at all times pertinent to the

allegations herein, a United States Corporation subject to the Constitution and laws

of the United States and whose principal place of business is 7 West Seventh Street

Cincinnati, Ohio 45202 in Hamilton County and equally subject to all laws

appertaining thereto.

22.  Defendant CITIGROUP, INC. ("Citigroup") was at all times pertinent to the

allegations herein, a United States Corporation subject to the Constitution and laws

of the United States and whose principal place of business is 399 Park Avenue

Manhattan  Borough New York 10043 and equally subject to all laws appertaining

thereto.

23.  Defendant, EXPERIAN CORPORATION ("Experian") is and was at all

times pertinent to the allegations herein, a Credit Reporting Agency subject to the

Constitution and laws of the United States and whose principal place of business is

in the State of Illinois, County of Cook, City of Shaumburg and equally subject to

all laws appertaining thereto.

24.  Et al defendants are sued herein under fictitious names as their true names,

identities and capacities are presently unknown to Plaintiff except they are the

agents, servants, employees, employers, representatives, co-venturers, associates,

vendors, suppliers, manufacturers, lessors, contractors or subcontractors of the

named Defendants and/or conducted some activity in a negligent or dangerous

manner which negligence was a legal cause of injuries or damages to Plaintiff

and/or were in some other manner related to the named Defendants and that their

true names, identities, capacities, activities and/or responsibilities as well as their

legal addresses or other method of contact relative to the present action are

presently unknown to Plaintiff. Plaintiff and/or his representative(s), if any, have

made diligent and good faith efforts to ascertain the full names, identities and

interest in this action of said et al defendants, including attorneys, before resorting

to referencing said entities simply as et al defendants.

## STATUTORY PREREQUISITES

25. Scott gave prompt and timely written notice to Defendant Macy's, by way of a letter of dispute dated July 14, 2014 in which Scott enumerated several acts taken against him resulting in inaccurate reporting of his credit worthiness, disputing *the entire amount* allegedly owing on his Macy's American Express Account and requested Macy's investigate the truth of his allegations.

26. Macy's received the letter of dispute on July 18, 2014 and sent Scott a confirmation letter dated July 22, 2014 in which they acknowledged they were conducting an investigation.

27. Macy's failed to conclude its investigation within the 30-day period allowed by law but rather than delete the trade line from Scott's credit file as he requested, it has reported Scott's account as delinquent and has conducted an active campaign of phone calls in an effort to collect a debt which is contrary to its own statement and to the law thus compelling Scott to request his Macy's American Express® account be closed and to further compel him to file the instant action.

## FACTUAL ALLEGATIONS

28. That on January 4, 2007 Scott applied for a Macy's Department Store Credit Card in the Pearlridge Shopping Center at Honolulu, Hawaii and was approved for a $1,200 in-store line of credit and a $4,000 Visa® line of credit for purchases

outside the store.

29.  That Scott's primary purpose in applying for credit that day was to purchase

a minibag and save cash to use for other things related to his relocation to his home

State of Washington.

30. That Scott was not immediately aware that with the application he was also

applying for a separate Visa® Account attached to the same card which could be

used for purchases outside the store.

31. That it was only upon receipt of the card that Scott discovered he had

essentially opened *two accounts* on the same card; one for purchases at Macy's and

the other for purchases outside the store.

32. That to the best of Scott's recollection his initial credit limit for in-store

purchases was $1,200 and the limit on the Macy's Visa® account was $4,000.

33.  That Scott's outside the store "buying power" increased incrementally first

to $5,000 on or about August 1, 2007 then to $6,500 on or about July1, 2008 then

to $8,000 on or about January 1, 2009 as he continued to use his line of credit

responsibly.

34. That in recognition of Scott's *responsible* use of his card when shopping at

Macy's, at some point Macy's also increased his in-store line of credit from $1,200

to $2,500 where it has remained since that time.

35. That sometime in August or September of 2010 Scott received an undated

notice from Macy's informing him that Macy's was switching from a Macy's card branded with the Visa® logo to one branded with the American Express® logo, that he would be receiving a Macy's American Express® Card by 09/30/10 with a new account number and informing him that, "Anywhere 'Visa' is mentioned in your Credit Card Agreement will now change to 'American Express.'"

36.   That Scott faithfully paid his monthly payments to Macy's before the due date and with few if any exceptions, always in an amount exceeding the minimum payment amount due even if only by a few dollars.

37.   That on January 8, 2009 Scott made a payment on his Macy's Visa account of $3,560 and another payment of $191.34 to bring his account balance to zero thus showing a history not only of on-time payments but a capacity to fulfill any credit obligation he might run up despite DNSB Macy's fears to the contrary and the record shows there was never a late payment until all these punitive measures were imposed by DSNB Macy's.

38. That on **January 5, 2013** Scott used his Macy's American Express® Card at a car dealership to provide a $1,500.00 down payment to purchase his present vehicle, a 2006 Chevrolet Trailblazer and that this transaction was approved.

39.   That an **Experian** credit report dated June 25, 2014 lists a single negative account with GESA CREDIT UNION showing an outstanding balance of $11, 885 was "charged off" as of **January of 2013**.

40. That this same report lists Scott's account with **DSNB American Express** as **Open/never late.**

41. That despite Scott's perfect record of on-time payments on his DSNB Macy's American Express account from June of 2007 until the reporting date of May 2014, in a notice dated **April 25, 2013** (about the time Macy's would have become aware of the GESA account as being charged off) Macy's informed Scott that, "… your Macy's American Express Account has been reduced. Your new credit limit is $2,900. This limit decrease *only applies to purchases made outside of our store and does not apply to purchases made within our store"* (emphasis added) further stating, "Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below" which was listed as "Equifax Credit Info Services."

42. That, although reasonable minds might disagree, one might well conclude the "default" of the GESA account noted in Scott's credit file served as the impetus for DSNB MACY'S to reduce Scott's line of credit from $8,000 to $2,900 which, aside from any late payments to his Macy's American Express® Account, might well seen as the use of Universal Default in the guise of it being "a business decision," which is prohibited by 15 U.S.C. 1666 (TILA) Chapter 4 as amended by Public Law 111-24 (CARD Act of 2009).

43. That there are no other events about this time that could be construed as

causing Macy's any pause as to how much credit it was extending to Scott other than a point of sale purchase in the amount of $1,500 (as described in paragraph 42 below) Scott having every right to use his Macy's American Express® to make any large purchase in any amount not exceeding his credit limit.

44.  That even if the initial reduction from $8,000 to $2,900 could be seen as a "business decision" based not solely on the defaulted GESA account but on the nearly simultaneous use of the Macy's American Express® card to provide a $1,500 down payment for a vehicle loan, the further *ratcheting down* of Scott's credit limit serves no useful business purpose and is an abuse of the greater power DSNB Macy's enjoys by virtue of the cardholder agreement which it drafted and which is a *contract of adhesion* as it was offered as a take-it-or leave-it proposition.

45.  That the dealership wanted Scott to make a larger down payment but Scott limited himself to $1,500 precisely because of his awareness of how much that would raise his monthly payment to Macy's knowing full well that charging any greater amount would make his ability to pay the increased monthly charge problematic at best.

46. That as confirmation that Scott's putting a $1,500 down payment on his Macy's American Express® card was *a responsible use* of the credit he had been granted by Macy's, Scott continued making his payment on time for the month of February 2014.

47.  That when a minimum payment of $89.00 was due for the month of March
2014, Scott was unable to pay *due to a mistake by the Department of Social
Health Services* ("DSHS") which had **wrongly** terminated Scott's Medically Needy
status resulting in the Social Security Administration informing Scott in a letter
dated April 7, 2014, "The State of Washington will no longer pay your Medicare
Part B (medical insurance) premiums after March 2014" adding that his next Social
Security check would be reduced from $2,007 to $797.10 to account for 2 months'
worth of Part B premiums and that following that his checks would be in the
amount of $902 due to the monthly $105 deduction of the premium from then on.

48. That due to the time it took to get reinstated by DSHS, Scott had to contact
several of his creditors including DSNB Macy's to inform them his payments
would be late and explaining why it was due to no fault of his own.

49.  That despite Scott's informing DSNB Macy's that his payment would be
late, and their promise to make a note of this in his file, Macy's billing department
telephoned Scott on Sunday April 27, 2014 (5 days after the payment was due) to
complain that his payment was late and to ask for payment.

50.  That despite having given Macy's a courtesy call to notify them that his
payment for March would be late and despite the cardholder agreement allowing
great latitude to Macy's not to impose a late fee, Macy's imposed a late fee in the
amount of $25 which made Scott's payment for April balloon to $222.44 which

Scott paid in full on May 2, 2014 bringing his account current.

51. That Scott's statement for the period ending May 22, 2014 showed Scott's account was 'over the limit" by $12 which may not have been the case had Macy's dealt fairly with Scott and not imposed the $25 late fee the previous month and/or if Macy's had not ratcheted down Scott's credit limit from $2,900 to $2,800 and then again to $2,700 (the total amount owing was $2,711.18)

52. That despite Scott's *responsible* use of his Macy's American Express charge account, DSNB Macy's overreacted to a perceived threat that Scott would not pay rather than relying on his past *responsible* use of his credit card privileges and on monitoring whether he was going to continue making the higher payments caused by the $1,500 increase in indebtedness.

53. That in reliance upon the "unaffected" in-store credit of $2,500, on Thursday June 5, 2014 at approximately 1:20 pm Scott attempted to make a purchase in Macy's Menswear Department and redeem a $10.00 Macy's Red Star Rewards® Certificate he had earned through prior purchases he had made at Macy's using his Macy's card.

54. That Scott's Macy's Card with the *expiration date of September 2015 was rejected* and that following the instructions of the clerk which was supposed to "reactivate" the card Scott found that instead he had been *deceived* into applying for a Macy's Card which application was rejected when in response to Scott's

entering of the data requested, a slip of paper came out stating that a letter would be sent to Scott to explain the denial.

55.  That despite the cardholder agreement stating that "membership in the Visa® Program (later changed to American Express®) requires a minimum dollar amount charged on your department store account annually" this provision is buried in the terms of agreement at paragraph 19 and DSNB Macy's never notified Scott that his in-store credit had been suspended because he had neglected to make a purchase in the previous 12 months. Nor does this provision as written indicate this specifically but seems rather more easily to be seen as Macy's desire that the cardholder not use the card just for outside purchases and not also for purchases at Macy's so that if the cardholder was not going to patronize Macy's the card and all its privileges could be withdrawn.  This is all the more the meaning that should be taken from this provision in light of Macy's giving Scott the assurance on three separate occasions that its credit decrease "*only applies to purchases made outside of our store and does not apply to purchases made within our store.*"

56.  That in fact, Scott did make purchases outside Macy's for the express purpose of seeing whether indeed his "American Express® privileges" had been suspended and they had not.

57. That on or about Tuesday June 10, 2013 Scott received a letter dated June 5, 2013 in which Macy's stated inter alia, "Unfortunately, we are unable to open a

new account for you at this time for the following reasons..." listing among other "key factors" impacting its decision "Serious Delinquency" and "Ratio of Balance to Limit on Bank Revolving or other Revolving Accounts Too High."

58.  That DSNB Macy's listing of "Ratio of Balance to Limit on Bank Revolving or other Revolving Accounts Too High" as a reason for denial is disingenuous at best since its three reductions in Scott's credit limit were the proximate cause of a major portion of this "fact" especially as spending some $3,000 on an account with an $8,000 credit limit is using a far lower percentage that using some $2,800 on an account with a credit limit of $2,900 which DSNB Macy's caused to occur on an account that was **"Open. Never late"** from 2007 to 2014.

59. That in a notice dated July 25, 2013 Macy's again informed Scott that his Macy's American Express Account had been reduced an additional $100 to $2,800 and included once again the assurance, *"This limit decrease only applies to purchases made outside of our store and does not apply to purchases made within our store"* stating its information was obtained in a report from Equifax (emphasis added).

60. That Scott received a third notice dated November 25, 2013 informing him that, his Macy's American Express Account had once again been reduced by $100 to $2,700 and again assuring Scott that, *"This limit decrease only applies to purchases made outside of our store and does not apply to purchases made within*

*our store" stating its information was obtained in a report from Equifax* (emphasis added).

61. That although the first notice of reduction from $8,000.00 $2,900 may have been justified as a business decision to limit Macy's financial exposure, the other two notices of reductions were clearly punitive and none of the three notices were in compliance with Macy's obligation to give a 45-day written notice of a significant change in terms pursuant to Public Law 111-24 Title I-Consumer Protection Sec. 101 (a)(1)(i)(2) and is also in violation of Public Law 111-24 Title I-Consumer Protection Sec. 101 (2)(b) prohibiting *Universal Default.*

62. That in contradistinction to conducting an investigation and reporting their findings to Scott, Defendants DSNB MACY'S have continued to badger Scott with numerous phone calls in an attempt to have Scott bring his account current including paying late fees and/or over-the-limit fees which were caused by DSNB MACY'S punitive ratcheting down of Scott's credit limit after the first decrease from $8,000 to $2,900.

63. That the failure of Defendants to complete an investigation pursuant to Scott's letter of dispute which Defendants acknowledged as received and report back to Scott its findings and the course of action it was choosing to take to resolve the dispute pursuant to provisions of TILA as amended, has caused irreparable harm to Scott for which he should be justly compensated.

64. That in transmitting information to DEFENDANT EXPERIAN Defendants reported Scott was 30 days past due in his payments which is shown in a credit report dated September 12, 2014 well after Defendants DSNB MACY'S should have completed their investigation which would have been 30 days from the date they received Scott's letter of dispute July 18, 2014 or by August 18, 2014 which is a direct violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, et sec. as well as Defendant's own published policies.

65. That in transmitting information to DEFENDANT EXPERIAN, DSNB MACY'S reported that as of September 16, 2014, Scott was 60 days past due in his payments to Defendants DSNB MACY'S that the last payment had been received in the month of July of 2014, Defendants contributed to a negative public profile of Scott at a time which was *after* the July 22, 2014 date of the letter in which Defendants acknowledged Scott's "recent inquiry" regarding several disputed actions which led to reporting Scott as late in his payment and over-the-limit (the reference would most likely have been to Scott's certified letter of dispute dated July 14, 2014 which reporting was in direct violation of the Fair Credit Billing Act (FCBA), 15 U.S.C. §1666-1666j.

66. That in a letter dated June 5, 2014 Scott was denied credit based on a credit report obtained from Experian which was well *after* both the original July 14, 2014 date of the letter of dispute in which Scott disputed actions taken by

DSNB MACY'S which artificially put him "over-the-limit," contributed to "late charges" being assessed unduly, unfairly withheld privileges and credits Scott was entitled to as a cardholder in good standing, caused an application to be processed when Scott attempted to make an in-store purchase when unbeknownst to him his privileges had been suspended instead of restoring those privileges (constituting fraud) and which reporting was therefore a direct violation of TILA, as amended, 15 U.S.C. §1601, et seq and the Fair Credit Billing Act (FCBA) 15 U.S.C. §1606-1666j and a direct cause of harm to Scott.

67.  That on or about Wednesday September 24, 2014 in an effort to prevent Macy's from reporting Scott as 90 days late, Scott called Macy's and asked them to close his Macy's American Express® line of credit and in response the agent said they would close that part of the account and send a new Macy's card that would only be good for purchases at Macy's.

68.  That in accordance with all the preceding, Defendants were and remain in violation of the Fair Credit Billing Act (FCBA), 15 U.S.C. §1666-1666j, the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, et seq and that violations of various provisions of these Acts by Defendants have caused irreparable harm to Plaintiff Scott and are therefore properly the subject of actionable claims for redress.

69.  That DEFENDANTS DSNB MACY'S have been in *breach of contract*

through acts and/or omissions that deprived Scott of the privileges he had previously enjoyed and the credits to which he was due thus *frustrating his purpose* in being a cardholder.

## CORRECTIVE ACTION SOUGHT

70. That such violations and actions of Defendants, under all applicable statutes as herein enumerated and as herein otherwise described, give rise to an actionable claim for redress in the way of **general damages** for loss of or injury to personal reputation, emotional distress, humiliation and embarrassment and loss of enjoyment of life; **special damages** for any continuing and future treatments that may be necessary to maintain a quality of life consistent with a normative standard of optimum mental and emotional health; fair and reasonable compensation for extra costs incurred as a direct result of the failure of Defendants to act in good faith to assist Scott in mitigating the issues and detrimental effects of Defendant's underlying actions; and consequential losses occasioned by denial of credit or the offer of credit; **compensatory damages** to make Scott whole through the restoration of an amount equal to the loss of purchasing power represented by the sudden reduction of his credit limit from $8,000 to $2,900 which dramatically affected his credit worthiness to other potential lenders and led to costs incurred as a result of increased APR's; and **punitive damages** to emphasize the serious

nature of the Defendant's actions along with **declaratory and injunctive relief** in order to restore Scott's good name and reputation, correct any negative information unlawfully reported to the three major credit reporting agencies (Experian, Equifax and Trans Union) and subsequently made a part of Scott's credit file as found in their databases and which then may have been reported to Scott's current creditors or reported to prospective creditors who may have made inquiry into Scott's credit history in order to make business decisions as to whether they wanted to make a firm offer of credit to Scott, along with **attorney's fees and other costs** as the Court may allow.

## BREACH OF CONTRACT

## FIRST CAUSE OF ACTION

71. Plaintiff hereby re-alleges and reincorporates all allegations as elsewhere herein set forth in 1-70 of this complaint by reference thereto.

72. Although paragraph 12 of the cardholder agreement states in part, "We can increase or decrease your credit limit without giving you notice in advance" it also adds the proviso "unless required by law," which must be stated because the issuer is mandated by the Credit Card Accountability Responsibility and Disclosure Act of 2009 TITLE I §101(a)(2) to give the cardholder a *45-day notice of any significant change* and only gave a *3-day notice*, Defendant **DSNB Macy's** is and was *in breach of one of the major terms of the contract* which was modified by the

foreging law to require the 45-day notice.

## FRAUD/DECEPTIVE BUSINESS PRACTICES

## SECOND CAUSE OF ACTION

73.  Plaintiff hereby re-alleges and reincorporates all allegations as elsewhere herein set forth in 1-72 of this complaint by reference thereto.

74.  In reliance upon Scott's "unaffected" in-store line of credit in the amount of $2,500 Scott attempted to make a Macy's Menswear purchase and redeem a $10 Macy's Red Star Rewards® certificate that he had earned through purchases but his Macy's American Express card with the expiration date of September 2015 was rejected at the register and that following the instructions of the clerk to "reactivate" the card Scott was instead *deceived* into applying for a Macy's Card which application was rejected as confirmed by a letter of declination sent by mail from **DSNB Macy's**. This *deception* caused Scott to apply for credit rather than having his in-store line of credit reactivated and this further caused him to lose out on the $10 Red Star Rewards Certificate he had earned and unjustly allowed DSNB Macy's to report a credit application on Scott's credit report which should not have been there. These actions damaged Scott's credit and reputation for which he demands both monetary and declaratory relief.

## WILLFUL AND NEGLIGENT VIOLATION OF THE FAIR CREDIT BILLING ACT (FCBA), 15 U.S.C. §1666(a)

## THIRD CAUSE OF ACTION

75. Plaintiff hereby re-alleges and reincorporates all allegations as elsewhere herein set forth in 1-74 of this complaint by reference thereto.

76. Defendants did willfully and negligently violate Scott's rights through acts or omissions in violation of THE FAIR CREDIT BILLING ACT (FCBA), 15 U.S.C. §1666(a) which sets forth the procedures a creditor is to follow and the timeframe in which the creditor is to respond to an obligor's request to correct a billing error upon timely notification by the obligor that a bill is in error, along with a *direct prohibition* to taking any action to collect the disputed amount or any part thereof and which acts or omissions were the proximate cause of substantial stress, humiliation and embarrassment to Scott when Defendants disregarded these provisions.

## WILLFUL AND NEGLIGENT VIOLATION OF 15 U.S.C. §1681, ET SEQ.THE FAIR CREDIT REPORTING ACT

## FOURTH CAUSE OF ACTION

77. Plaintiff hereby re-alleges and reincorporates all allegations as elsewhere herein set forth in 1-76 of this complaint by reference thereto.

78. Defendants **DSNB MACY'S** did knowingly, willfully and negligently violate Scott's rights through acts or omissions in violation of THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681s-2 §6239(a)(1)(A) reporting disputed information with actual knowledge of errors, which acts were the

proximate cause of higher fees for services and/or denial of credit to Scott from other creditors.

## WILLFUL AND NEGLIGENT VIOLATION OF THE FAIR CREDIT BILLING ACT (FCBA), 15 U.S.C. §1666(c)

### FIFTH CAUSE OF ACTION

79.  Plaintiff re-alleges and reincorporates all allegations as set forth in 1-78 of this complaint by reference thereto.

80.  Defendants **DSNB MACY'S** did willfully and negligently violate Scott's rights by repeated efforts to collect a debt in violation of THE FAIRCREDIT BILLING ACT (FCBA), 15 U.S.C. §1666(c) which contains a *direct prohibition* to taking any action to collect the disputed amount or any part thereof prior to conducting and reporting the results of an investigation and which collection activities were the proximate cause of considerable stress, humiliation and embarrassment to Scott.

## WILLFUL AND NEGLIGENT VIOLATION OF 15 U.S.C. §1681, ET SEQ. THE FAIR CREDIT REPORTING ACT

### SIXTH CAUSE OF ACTION

81.  Plaintiff re-alleges and reincorporates all allegations as set forth in 1-80 of this complaint by reference thereto.

82.  Defendant **Experian Corporation** willfully and negligently continued to report Plaintiff Scott's Macy's American Express account as delinquent after Scott

provided them with proofs that the status of the account had been disputed

under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, et seq and

instructed them to remove the account subsequent to DSNB's failure to complete

its investigation within the statutory limit of thirty days pursuant to Scott's timely
notice of dispute.

## WILLFUL AND NEGLIGENT VIOLATION OF THE FACT ACT §312(c) amending 15 U.S.C. 1681s-2 §623

## SEVENTH CAUSE OF ACTION

83.  Plaintiff re-alleges and reincorporates all allegations as set forth in 1-82 of

this complaint by reference thereto.

84.  The failure of Defendant **DSNB MACY'S** to conduct the investigation of

the disputed information they claimed they were conducting and to complete that

investigation within the 30-day period prescribed by 15 U.S.C. 1681 FCRA §611

(a)(1)(A) together with the failure to have the offending credit line deleted from

Scott's credit file at the conclusion of that investigatory timeframe as mandated by

15 U.S.C. 1681 FCRA §611 (a)(5)(i; ii) has harmed Scott because it has resulted in

a rapid decline of Scott's credit score from the 600 range (average) to the 500

range (poor) preventing him from obtaining credit from other credit sources or

negatively impacting the amount of credit offered and/or the APR or terms under

which such credit might otherwise be extended.

## WILLFUL AND NEGLIGENT VIOLATION OF 15 U.S.C. 1681s-2(a)(8) THE CREDIT CARD ACCOUNTABILITY RESPONSIBILITY and DISCLOSURE ACT OF 2009

### EIGHTH CAUSE OF ACTION

85.   Plaintiff re-alleges and reincorporates all allegations as set forth in 1-84 of this complaint by reference thereto.

86.  Defendants **DSNB Macy's** made *significant changes* to the terms of Scotts revolving credit account and were required under the CARD Act to give a 45-day written notice to Scott *each time they made a significant change* but gave only a 3-day notice each time they reduced his credit limit which was especially egregious the first time when Scott's credit limit was reduced from $8,000 to $2,900.

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### NINTH CAUSE OF ACTION

87. Plaintiff re-alleges and reincorporates all allegations as set forth in 1-86 of this complaint by reference thereto.

88. The unexpected and unfounded actions of Defendants in assessing Scott's account with late fees after notifying Scott that the items he disputed were being investigated and the further action of a plethora of phone calls attempting to collect the disputed debt and late fees through collection actions by its in-house collections department, in direct violation of 15 U.S.C. §1681, et seq. have caused

Scott a great deal of mental and emotional anguish.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Scott respectfully seeks the following from this Honorable Court:

a. for general damages of $15,000.00 or in such other amount as shall be shown at time of trial herein;

b. for special damages of $5,000.00 or in such other amount as shall be shown at time of trial herein;

c. for compensatory damages of $1,000.00 or in such other amount as shall be shown at time of trial herein;

d. for punitive damages of $100,000 or in such other amount as shall be shown at time of trial herein;

e. for attorney fees (if represented by counsel) and other costs including interest and pre-judgment interest as may be allowed by law; and

f. for other relief as this Court deems just and proper.


DATED:   Yakima, Washington   *October 2 nd*  , 2014

DAVID I. SCOTT
PLAINTIFF-PRO SE