1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

13

DAVID I. SCOTT,

                    Plaintiff,

    v.

MACY'S INC.; CITIGROUP, INC.;
EXPERIAN CORPORATION, et al.
and Partnerships, Corporations, and/or
other entities 1-100,

                    Defendants.

NO:  1:14-CV-3141-TOR

ORDER RE: DEFENDANTS'
MOTIONS TO DISMISS

14

15

16

17

18

19

20

    BEFORE THE COURT are the following motions: (1) Defendant Macy's,

Inc.'s Motion to Dismiss (ECF No. 10); (2) Citigroup, Inc.'s Motion to Dismiss

(ECF Nos. 11); (3) Plaintiff's Motion to Strike Defendant's Motion to Dismiss and

for Leave of Court to File an Amended Complaint (ECF No. 18); and (4)

Plaintiff's Notice of Withdrawal of Experian Corporation as a Party and

Dismissing All Claims Against Experian Corporation with Prejudice (ECF No.

25).  These matters were submitted for consideration without oral argument.  The

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 1

Court has reviewed the briefing and the record and files herein, and is fully informed.

## BACKGROUND

Plaintiff David Scott, proceeding *pro se*, asserts claims for breach of contract, fraud/deceptive business practices, and violation of numerous consumer protection statutes. ECF No. 5. Defendants Macy's and Citigroup have filed motions to dismiss for failure to state a claim. ECF Nos. 10; 11. Mr. Scott has moved to strike this motion, amend his Complaint, and voluntarily dismiss Experian Corporation as a Defendant. ECF Nos. 18, 25.

## FACTS

The following facts are drawn principally from Mr. Scott's Complaint, as well as the materials incorporated by reference and attached for this Court's review by Macy's,[1] and are accepted as true for purposes of the instant motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

---

[1] Although the court's review on a 12(b)(6) motion to dismiss is generally limited to the contents of the complaint, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The court may treat such a document as 'part of

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 2

In January 2007, Mr. Scott applied and was approved for a Macy's credit card. ECF No. 5 ¶ 28. With this card, Mr. Scott had two lines of credit: one for in-store purchases and one for purchases outside the store, initially through Visa and then through American Express. *Id.* ¶¶ 28, 30, 35. Mr. Scott was provided a $1,200 in-store line of credit and a $4,000 out-of-store line of credit. *Id.* ¶ 32. By January 2009, Mr. Scott's in-store line of credit increased to $2,500, and his out-of-store line of credit increased to $8,000. *Id.* ¶¶ 33, 34.

Although Mr. Scott contends he maintained a "perfect record of on-time payments," Macy's decreased Mr. Scott's out-of-store line of credit from $8,000 to $2,900 in response to information obtained from Equifax Credit Info Services, a consumer reporting agency. *Id.* ¶ 41. Macy's provided Mr. Scott notice of this decrease in April 2013, three days before the decrease would go into effect. *Id.* ¶¶ 41, 72. Macy's further decreased Mr. Scott's out-of-store line of credit in July to $2,800, *id.* ¶ 59, and then again in November 2013 to $2,700, *id.* ¶ 60. Plaintiff acknowledges that the first reduction "may have been justified as a business

the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 3

decision to limit Macy's financial exposure,"[2] but that the other two reductions were "clearly punitive." *Id.* ¶ 61.

In March 2014, due to a severe reduction in his Social Security monthly payments, Mr. Scott was unable to make his minimum monthly card payment to Macy's. *Id.* ¶ 47. Although he informed Macy's that his payment would be late, Macy's billing department nonetheless called Mr. Scott demanding payment. *Id.* ¶¶ 48-49. Mr. Scott asserts that Macy's continued to "badger" him for payment. *Id.* ¶ 62.

In June 2014, Mr. Scott attempted to use his in-store line of credit at Macy's. *Id.* ¶ 53. Although Mr. Scott's card's expiration date was September 2015, Mr. Scott had admittedly not used the card for in-store purchases in the past twelve months. *Id.* ¶¶ 53-54. Mr. Scott acknowledges that the cardholder agreement required a minimum annual dollar amount charged on the department store account in order to retain membership. *Id.* ¶ 55. In an attempt to "reactivate" his card, Mr. Scott contends he was "deceived" into applying for a new card. *Id.* ¶ 54. Macy's subsequently denied Mr. Scott's application, citing "Serious Delinquency" and

---

[2] Mr. Scott acknowledges the "business decision" Macy's made when it initially reduced his line of credit from $8,000 to $2,900 in light of his defaulted GESA Credit Union account and his use of card to place a $1,500 down payment on a vehicle. ECF No. 5 ¶ 44.

"Ratio of Balance to Limit on Bank Revolving or other Revolving Accounts Too High" as the key factors for its denial.  *Id.* ¶ 57.

In May 2014, for the period ending on May 22, 2014, Mr. Scott's account was "over the limit" by $12, which he attributes to the $25 late fee imposed the previous month and his credit line reduction imposed in November 2013.  *Id.* ¶ 51.

On July 14, 2014, Mr. Scott sent a "letter of dispute" to Macy's.  ECF No. 10 at 18.  In this letter, Mr. Scott asserted that he "DISPUTE[D] THE ENTIRE BALANCE" on his account and thus was "not obligated to pay anything on this disputed balance."  *Id.*  Mr. Scott notified Macy's that he was going to initiate a civil action to challenge the legality of the card agreement and any debt owed.  *Id.*  Macy's acknowledged receipt of Mr. Scott's letter on July 22, 2014, assuring Mr. Scott that it would investigate his inquiry.  *Id.* at 23.

Mr. Scott filed the instant lawsuit on October 3, 2014, against Macy's Inc., Citigroup, Inc., and Experian Corp.  ECF No. 5.  This Court conducted the required screening of Mr. Scott's Complaint and directed service on the named Defendants.  ECF No. 6.  This Court expressly stated that its sufficiency finding did not preclude Defendants from filing motions to dismiss on the grounds of frivolousness, maliciousness, or failure to state a claim.  *Id.* at 2 n. 2.

In the motions presently before this Court, Macy's and Citigroup move to dismiss Mr. Scott's complaint for failure to state a claim, Mr. Scott moves to strike

1    Defendants' motion for dismissal and take leave to file an amended complaint, and

2    Mr. Scott moves to voluntarily dismiss Experian Corporation as a Defendant.

### DISCUSSION

4          A motion to dismiss for failure to state a claim tests the legal sufficiency of

5    the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To

6    withstand dismissal, a complaint must contain "enough facts to state a claim to

7    relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Naked

8    assertion[s]," "labels and conclusions," or "formulaic recitation[s] of the elements

9    of a cause of action will not do." *Id.* at 555, 557. "A claim has facial plausibility

10   when the plaintiff pleads factual content that allows the court to draw the

11   reasonable inference that the defendant is liable for the misconduct alleged."

12   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a plaintiff need not establish a

13   probability of success on the merits, he or she must demonstrate "more than a sheer

14   possibility that a defendant has acted unlawfully." *Id.*

15         A complaint must also contain a "short and plain statement of the claim

16   showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This

17   standard "does not require detailed factual allegations, but it demands more than an

18   unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at

19   678 (quoting *Twombly*, 550 U.S. at 555). In assessing whether Rule 8(a)(2) has

20   been satisfied, a court must first identify the elements of the plaintiff's claim(s) and

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 6

then determine whether those elements could be proven on the facts pled.  The

court should generally draw all reasonable inferences in the plaintiff's favor, *see*

*Sheppard v. David Evans and Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012), but it

need not accept "naked assertions devoid of further factual enhancement."  *Iqbal*,

556 U.S. at 678 (internal quotations and citation omitted).

    Federal Rule of Civil Procedure 9(b) governs the pleading of allegations

involving fraud or mistake.  In contrast to the more lenient standard set forth in

Rule 8(a)(2), Rule (9)(b) requires that a party "state with particularity the

circumstances constituting fraud or mistake" in his or her complaint.  To satisfy

this standard, the allegations of fraud must "be specific enough to give defendants

notice of the particular misconduct so that they can defend against the charge and

not just deny that they have done anything wrong."  *Vess v. CibaGeigy Corp. USA*,

317 F.3d 1097, 1106 (9th Cir. 2003) (quotation and citation omitted).  Thus,

"[a]verments of fraud must be accompanied by the who, what, when, where, and

how of the misconduct charged."  *Id.* (quotation and citation omitted).  A party

may, however, plead allegations of "[m]alice, intent, knowledge, and other

conditions of a person's mind" more generally.  Fed. R. Civ. P. 9(b).

    In ruling upon a motion to dismiss, a court must accept all factual allegations

in the complaint as true and construe the pleadings in the light most favorable to

the party opposing the motion.  *Sprewell v. Golden State Warriors*, 266 F.3d 979,

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 7

988 (9th Cir. 2001).  The court may disregard conclusory allegations and

arguments which are not supported by reasonable deductions and inferences.  *Id.*

### A. Motion to Voluntarily Dismiss

Federal Rule of Civil Procedure 41 governs dismissal of actions.  A plaintiff

may voluntarily dismiss an action, without leave of the court, if the notice of

dismissal is filed "before the opposing party serves either an answer or a motion

for summary judgment" or if the plaintiff presents "a stipulation of dismissal

signed by all parties who have appeared."  Fed. R. Civ. P. 41(a)(1).  Otherwise, "an

action may be dismissed at the plaintiff's request only by court order, on terms that

the court considers proper."  *Id.* at 41(a)(2).  "A district court should grant a

motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show

that it will suffer some plain legal prejudice as a result."  *Smith v. Lenches*, 263

F.3d 972, 975 (9th Cir. 2001).  The decision to grant or deny a motion pursuant to

Rule 41(a)(2) is within the sound discretion of the court.  *Sams v. Beech Aircraft

Corp.*, 625 F.2d 273, 277 (9th Cir. 1980).  District courts have broad discretion in

deciding whether to dismiss actions *with* or *without* prejudice.  *WPP Luxembourg

Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1058 (9th Cir. 2011).

Mr. Scott has moved to voluntarily dismiss, with prejudice, all claims

against Experian Corporation.  ECF No. 25.  Although Experian has not yet

appeared before this Court, Mr. Scott represents that he and Experian have

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 8

1   stipulated to dismissal with prejudice pursuant to a settlement agreement.  *Id.*  This

2   Court finds no reason to deny Mr. Scott's request for voluntary dismissal.

3   Accordingly, Mr. Scott's motion for voluntary dismissal (ECF No. 25) is

4   **GRANTED**.  Experian Corporation is dismissed with prejudice, along with all

5   claims against it, including Plaintiff's Sixth Cause of Action ("Willful and

6   Negligent Violation of 15 U.S.C. § 1681, ET SEQ. The Fair Credit Reporting

7   Act"), which is alleged solely against Experian.

8   **B. Plaintiff's Motion to Strike**

9        Mr. Scott moves to strike Macy's Motion to Dismiss on the grounds that the

10  "motion is premature and/or out of order" pursuant to Federal Rule of Civil

11  Procedure 4 or has otherwise been "filed in bad faith."  ECF No. 18 at 2.

12  Specifically, Mr. Scott objects to Macy's having filed its motion before any of the

13  Defendants waived service or otherwise acknowledged receipt of service.  *Id.*  Mr.

14  Scott also objects to certain statements in Macy's motion: the "patently false"

15  accusation that Mr. Scott refers to his card as a Visa card throughout his

16  Complaint, even though he explicitly acknowledges that it was later changed to an

17  American Express card; and the statement that Mr. Scott admits the cardholder

18  agreement requires at least one in-store purchase to be made in a twelve-month

19  period, rather than acknowledging that it is a disputed material fact.  *Id.* at 5-6.

20

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 9

1    In response, Macy's and Citigroup assert that they received notice of Mr.

2    Scott's lawsuit on November 10, 2014, and subsequently appeared before this

3    Court and filed their response on December 1, 2014, which response was due

4    within 21 days of service.  ECF No. 19 at 2-3.  Thereafter, the U.S. Marshal's

5    office contacted Macy's and Citigroup, requesting that they sign a waiver of

6    service, which they promptly did.  *Id.* at 3.

7    This Court finds no grounds to strike Macy's motion, nor any part thereof.

8    Although Macy's and Citigroup did not return their waiver of service after they

9    received notice of Mr. Scott's lawsuit, their appearance and corresponding filings,

10   submitted on December 1, 2014, demonstrate that service was properly executed.

11   Despite Mr. Scott's contention that he "was deprived of his substantial rights to

12   proper service," this Court finds he has suffered no harm.  Further, although the

13   Court takes notice of Mr. Scott's objections—namely whether he properly referred

14   to his card as an American Express card and whether it is a disputed issue of

15   material fact that he needed to use his Macy's card within a twelve-month period—

16   the Court does not find these statements particularly relevant or helpful to its

17   determination of the pending motions.  Accordingly, Mr. Scott's motion (ECF No.

18   18) to strike Macy's motion, or any part thereof, is **DENIED**.

19   //

20   //

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 10

**C. Defendants' Motions to Dismiss**[3]

    1. <u>Breach of Contract</u>

Mr. Scott alleges that Defendant Macy's breached the cardholder agreement when it decreased his credit limit without 45-days' notice. ECF No. 5 ¶ 72. Although Mr. Scott acknowledges that the agreement explicitly stated "[Macy's] can increase or decrease [his] credit limit without giving [him] notice in advance," he asserts that the provision, "unless required by law," supports his argument for breach. *Id.* In support, Mr. Scott cites to the Credit CARD Act of 2009, Title I, § 101(a)(2), which requires a 45-day notice of any "significant change" to a credit card account. *Id.* Thus, because Defendant Macy's only gave Plaintiff 3-days' notice before decreasing his credit limit, Plaintiff alleges this constitutes breach. *Id.*

To prevail on his breach of contract claim, a plaintiff must establish: (1) the existence of a valid contract; (2) breach; and (3) damages. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wash. App. 707, 712 (1995). "[A] violation of statute is actionable only if the statute imposes a duty, the duty is breached, and the

---

[3] Although Citigroup filed a separate motion to dismiss, on the ground that none of the allegations in Mr. Scott's Complaint are made against Citigroup, it joins Macy's motion to the extent Mr. Scott is attempting to hold Citigroup, Macy's parent company, liable for Macy's conduct. *See* ECF No. 11.

1   breach was a proximate cause of damage to the claimant." *Id.* (citing *Ward v.*

2   *Zeugner*, 64 Wash.2d 570, 574-75 (1964)).

3        The Credit Card Accountability Responsibility and Disclosure Act of 2009

4   ("Credit CARD ACT") requires advance notice for certain changes to a credit card

5   account:

6        In the case of any credit card account under an open end consumer
         credit plan, a creditor shall provide a **written notice of any**
7        **significant change, as determined by rule of the Bureau**, in the
         terms (including an increase in any fee or finance charge, other than
8        as provided in paragraph (1)) of the cardholder agreement between the
         creditor and the obligor, **not later than 45 days prior to the effective**
9        **date of the change**.

10  15 U.S.C. § 1637(i)(2) (emphasis added).  The Bureau, defined in the statute as the

11  Bureau of Consumer Financial Protection, 15 U.S.C. § 1602, is thus charged with

12  defining what action constitutes a "significant change."  In its regulations, the

13  Bureau states no notice is required when, among other things, "the change involves

14  . . . a reduction of any component of a finance or other charge; suspension of future

15  credit privileges . . .; or termination of an account or plan."  12 C.F.R. §

16  1026.9(c)(2)(v).  Conversely, the Bureau requires 45-day advance notice "before

17  an over-the-limit fee or a penalty rate can be imposed solely as a result of the

18  consumer exceeding the newly decreased credit limit."  *Id.* § 1026.9(c)(2)(vi).[4]

19  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [4] As Defendants highlight, the Bureau's website advises consumers that "[c]ard

20  issuers generally can increase or decrease credit limits without giving [consumers]

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 12

1    This Court finds Mr. Scott has failed to state a claim for breach.   Even

2    considering the Credit CARD Act and the Bureau's accompanying regulations,

3    Macy's was not required to provide Mr. Scott 45-days' notice before reducing his

4    credit line because such a reduction was not a "significant change" to his account.

5    Although Mr. Scott suffered over-the-limit fees on his account in May 2014, which

6    he attributes, in part, to Macy's reduction in credit, the final credit reduction to Mr.

7    Scott's account was made in November 2013; thus, 12 C.F.R. § 1026.9(c)(2)(vi),

8    requiring advance notice before an over-the-limit fee is imposed solely as a result

9    of the cardholder exceeding the recently reduced credit limit, is inapplicable to the

10   facts alleged.  Accordingly, Mr. Scott's breach of contract claim must be

11   dismissed.

12        2.  <u>Willful & Negligent Violation of the Credit Card Accountability</u>

13            <u>Responsibility and Disclosure Act (Eighth Cause of Action)</u>

14        Mr. Scott's Eighth Cause of Action similarly alleges that Macy's violated

15   the Credit CARD Act when it made "significant changes to the terms of [his]

16   notice, including reducing [a consumer's] credit limit so that [the consumer] no

17   longer [has] any available credit." *Ask CFPB*, Consumer Financial Protection

18   Bureau (updated July 26, 2012), http://www.consumerfinance.gov/askcfpb/74/i-

19   just-discovered-that-the-card-issuer-has-reduced-my-credit-limit-and-i-no-longer-

20   can-charge-anything-can-they-do-that.html.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 13

1  revolving credit account" without providing the requisite 45-day notice.  ECF No.

2  5 ¶ 86.   Although Mr. Scott cites 15 U.S.C. 1681s-2(a), which address the

3  "[a]bility of a consumer to dispute information directly with furnisher,"[5] he

4  references the Credit CARD Act and supports his claim with the allegation that

5  Macy's failed to give him 45-days' notice each time it made a "significant change"

6  to his account.  This Court construes Mr. Scott's Eighth Cause of Action as again

7  alleging violation of the Credit CARD Act, 15 U.S.C. § 1637(i)(2).  As discussed

8  above, Macy's did not violate this statute because its reduction of Mr. Scott's

9  credit line did not constitute a "significant change" under the statute of

10  accompanying regulations.  Accordingly, Mr. Scott's Eighth Cause of Action must

11  also be dismissed.

12  //

13  //

14  //

15  //

---

16  [5] Although the Fair Credit Reporting Act provides a private right of action in some

17  instances, that right of action is limited to claims first disputed to the credit

18  reporting agency.  *See* 15 U.S.C. § 1681s-2(c); *Sanders v. Mountain Am. Fed.*

19  *Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012) (citing *Nelson v. Chase*

20  *Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002)).

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 14

3.  <u>Fraud/Deceptive Business Practices</u>[6]  (Second Cause of Action)

Mr. Scott's Second Cause of Action alleges that Macy's engaged in a deceptive business practice when it "deceived" him into applying for a new Macy's card, rather than having his in-store credit reactivated.  ECF No. 5 at 23. As clarified in his response briefing, Mr. Scott is alleging that it was both "deceptive and fraudulent to not reactivate the account" and "to cause [Mr. Scott] to apply for credit the merchant knew or should have known would not be approved."  ECF No. 18 at 16.  Because Mr. Scott's application was rejected, his credit and reputation were damaged and he "los[t] out on the $10 Red Star Rewards Certificate he had earned."  ECF No. 5 at 23.

Washington's Consumer Protection Act ("CPA") provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Wash. Rev. Code § 19.86.020.  To assert a citizen suit under the CPA, a plaintiff must prove "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5)

_____

[6] Although Plaintiff's Complaint provides no citation, Plaintiff clarifies in his response briefing that his Second Cause of Action is under common law fraud and Washington state law, which this Court construes as a claim under the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.093.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 15

1  causation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 37 (2009) (en

2  banc) (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d

3  778, 784 (1986)). "Whether a particular act or practice 'unfair or deceptive' is a

4  question of law." *Id.* at 47 (citing *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131

5  Wash.2d 133, 150 (1997)). "A plaintiff need not show the act in question was

6  intended to deceive, only that it had the capacity to deceive a substantial portion of

7  the public." *Id.*

8         Here, this Court finds no factual allegations supporting a plausible claim for

9  deceptive business practice.  Namely, Mr. Scott's allegations cannot satisfy the

10 first element: that the act in question was an unfair or deceptive act or practice with

11 the capacity to deceive a substantial portion of the public.  Accordingly, his

12 Complaint does not present any allegations to support a claim under the CPA.

13        Considering Mr. Scott's allegations under the elements of a common law

14 claim for fraud proves equally fruitless.  Under Washington law, a plaintiff must

15 establish the following elements to prove a claim for fraud: "(1) A representation

16 of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of

17 its falsity or ignorance of its truth; (5) his intent that is should be acted on by the

18 person to whom it is made; (6) ignorance of its falsity of the part of the person to

19 whom it is made; (7) the latter's reliance on the truth of the representation; (8) his

20

1    right to rely upon it; (9) his consequent damage." *Kirkham v. Smith*, 106

2    Wash.App. 177, 183 (2001).

3        Again, the only allegations Mr. Scott presents in support of his claim are

4    that he attempted to use his in-store Macy's card, was "deceived" into applying for

5    a new one rather than reactivating his current one that he admittedly had not used

6    within the last twelve months, and, as a result, his credit was damaged and he was

7    denied use of a $10 Rewards Certificate.  These allegations do not support a claim

8    for fraud; namely, what conduct by the Macy's employee who assisted Mr. Scott in

9    applying for a new Macy's card constitutes representation of a false, material fact

10   actionable under common law fraud.  Accordingly, Mr. Scott's Second Cause of

11   Action is dismissed.

12       4.  Willful & Negligent Violation of the Fair Credit Billing Act (Third &

13           Fifth Causes of Action)

14       Mr. Scott's Third and Fifth Causes of Action allege that Macy's violated the

15   Fair Credit Billing Act ("FCBA") when it failed to timely respond to his request to

16   correct a billing error and attempted to collect the disputed amount on his bill.

17       The FCBA sets forth the procedural requirements when a credit card holder

18   disputes charges on his billing statement.  Pursuant to 15 U.S.C. § 1666(a), an

19   obligor has 60 days from the time he receives his bill to provider the creditor

20   written notice of any disputed charges.  In this notice of a billing error, the obligor

"(1) sets forth or otherwise enables the creditor to identify the name and account

number (if any) of the obligor, (2) indicates the obligor's belief that the statement

contains a billing error and the amount of such billing error, and (3) sets forth the

reasons for the obligor's belief (to the extent applicable) that the statement contains

a billing error."  15 U.S.C. § 1666(a)(1)-(3).  The creditor must then, within 30

days after receipt of this notice, "send a written acknowledgment thereof to the

obligor."  *Id.* § 1666(a)(3)(A).  Thereafter, the creditor, "not later than two

complete billing cycles of the creditor (in no event later than ninety days) after the

receipt of the notice and prior to taking any action to collect the [disputed]

amount," must either make appropriate corrections to the account or send written

explanation or clarification explaining why the charges are valid.  *Id.*

§ 1666(a)(3)(B).

      Here, Mr. Scott sent a letter of dispute to Macy's, disputing the entire

amount on his bill, on July 14, 2014.  Macy's acknowledged receipt of Mr. Scott's

letter on July 22, 2014, confirming it would conduct an investigation into his

inquiry.  Mr. Scott did not present any information in his Complaint as to the

length of his billing cycle, but considering the 90-day statutory term, Macy's could

not have finished its investigation and either corrected the charges or explained

their validity because Mr. Scott filed suit on October 3, 2014—77 days after

Macy's acknowledgement letter.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 18

1      Arguably, Mr. Scott's "letter of dispute" did not even trigger the statute's

2  requirements.  Mr. Scott's letter provided no detail as to which charges he

3  disputed, the amount of these disputed charges, or the basis for him disputing

4  "every last penny of the amount  . . . purportedly owe[d]."  ECF No. 10 at 19.

5  Instead, Mr. Scott disputed "THE ENTIRE BALANCE ON ACCOUNT," which

6  statement he expressly stated would then temporarily release him from any

7  payment obligations.  *Id.* at 18.  Surely, the statute's intent is not to give consumers

8  the right to allege generalized, blanket disputes of their bills in an effort to delay or

9  avoid payment.  If that were the case, then all obligors could temporarily avoid

10  payment and force the creditors to investigate unsupported and unexplained

11  disputes, all while being prohibited from collecting any payment.  Accordingly,

12  because Mr. Scott has failed to state a plausible claim for relief under the FCBA,

13  his Third and Fifth Causes of Action must be dismissed.

14          5.  <u>Willful & Negligent Violation of the Fair Credit Reporting Act</u>

15              <u>(Fourth & Seventh Causes of Action)</u>

16      Mr. Scott's Fourth and Seventh Causes of Action allege that Macy's violated

17  the Fair Credit Report Act[7] ("FCRA").  Mr. Scott alleges that Macy's violated the

---

18  [7] Specifically, Mr. Scott's Fourth Cause of Action cites to "THE FAIR CREDIT

19  REPORTING ACT (FCRA), 15 U.S.C. § 1681s-2 § 6239(a)(1)(A)" and his

20  Seventh Cause of Action cites to the "FACT Act § 312, amending 15 U.S.C. 1681-

Act when it "report[ed] disputed information with actual knowledge of errors" and "fail[ed] to have the offending credit line deleted from [Mr. Scott's] credit file." ECF No. 5 at 24-26.

FCRA prohibits a furnisher of financial information from reporting information it knows to be inaccurate.  "[T]o ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to [credit reporting agencies], called 'furnishers' in the statute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009).  Under subsection (a) of the statute, "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Subsection (b) imposes a second category of duties on furnishers, triggered "upon notice of dispute," when a person who furnished information to a credit reporting agency receives notice from the credit reporting agency that the consumer disputes the information.  *Id.* § 1681s-2(b); *see id.* § 1681i(a)(2).

FCRA provides a private right of action for willful or negligent noncompliance but such right is limited to claims arising under subsection (b).

2 § 628," "15 U.S.C. 1681 FCRA § 611(a)(1)(A)," and "15 U.S.C. 1681 FCRA §611(a)(5)(i;ii)."  This Court construes Mr. Scott's pleading as asserting causes of action under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 20

1   *Gorman*, 584 F.3d at 1154.  Accordingly, a private right of action arises "only after

2   the furnisher receives notice of dispute from a [credit reporting agency]; notice of a

3   dispute received directly from the consumer does not trigger furnishers' duties

4   under subsection (b)."   *Id.* (citing *Nelson*, 282 F.3d at 1059-60; *see* 15 U.S.C. §

5   1681s-2(b)(1); *see also Sanders*, 689 F.3d at 1147 ("While [FCRA] also gives

6   consumers a private right of action against those who violate its provisions . . . that

7   right of action is limited to claims against the credit reporting agency; it does not

8   extend to furnishers.").  Conversely, subsection (a) is exclusively enforced by

9   federal and state officials.  *Nelson*, 282 F.3d at 1059.

10          This Court finds Mr. Scott has failed to state a claim under FRCA.  First,

11  Mr. Scott's claim fails under subsection (a) because he lacks standing to enforce

12  this subsection.  Second, Mr. Scott's claim fails under subsection (b) because he

13  has not presented any allegation that he first notified the credit reporting agency of

14  his dispute.  *Townsend v. Bank of Am., N.A.*, 445 Fed. App'x 908, 909 (9th Cir.

15  2011) ("The district court properly dismissed the FCRA claims because there is no

16  private right of action under 15 U.S.C. § 1681s-2(a) . . ., and [plaintiff] did not

17  allege that he notified a credit reporting agency of his dispute, as required to trigger

18  the duties set forth in 15 U.S.C. § 1681s-2(b) . . . .").  Accordingly, Mr. Scott's

19  Fourth and Seventh Causes of Action must be dismissed.

20  *//*

1        6.  <u>Negligent Infliction of Emotional Distress (Ninth Cause of Action)</u>

2        Mr. Scott's Ninth Cause of Action alleges Defendants' conduct violated the

3  tort of negligent infliction of emotional distress.  In support, Mr. Scott states that

4  the "unexpected and unfounded actions of Defendants in assessing Scott's account

5  with late fees after notifying Scott that the items he disputed were being

6  investigated and the further action of a plethora of phone calls attempting to collect

7  the disputed debt and late fees" caused him "a great deal of mental and emotional

8  anguish."  ECF No. 5 at 27-28.

9        To establish the tort of negligent infliction of emotional distress, a plaintiff

10  must show that (1) the defendant engaged in negligent conduct; (2) the plaintiff

11  suffered serious emotional distress; and (3) the defendant's negligent conduct was

12  the cause of the plaintiff's serious emotional distress.  *See Hegel v. McMahon*, 136

13  Wash.2d 122, 135 (1988).  "As with any claim sounding in negligence, where a

14  plaintiff brings suit based on negligent infliction of emotional distress '[the court]

15  test[s] the plaintiff's negligence claim against the established concepts of duty,

16  breach, proximate cause, and damage or injury."  *Snyder v. Med. Serv. Corp. of E.*

17  *Wash.*, 145 Wash.2d 233, 243 (2001).  In addition to the traditional elements of

18  negligence, a plaintiff must show an "objective symptomology" that is susceptible

19  to a medical diagnosis.  *Kloepfel v. Bokor*, 149 Wash.2d 192, 196-97 (2003) (en

20  banc).

Mr. Scott has failed to establish that Defendants owed him a duty, subsequently breached that duty, or that he has suffered emotional distress "susceptible to medical diagnosis." Rather, Mr. Scott merely re-alleges the same facts that form the basis of the above dismissed claims. Such allegations do not support a cause of action for the tort of negligent infliction of emotional distress. Accordingly, Mr. Scott's Ninth Cause of Action must also be dismissed.

**D. Plaintiff's Motion for Leave to Amend Complaint**

Rule 15(a) provides that, except in circumstances not present here, "a party may amend its pleading only with the opposing party's written consent or the court's leave," which "[t]he court should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has directed that this policy be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). Unless it is absolutely clear that amendment would be futile, a *pro se* litigant must be given the opportunity to amend his complaint to correct any deficiencies. *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc).

Mr. Scott filed his initial Complaint in this action on October 3, 2014. ECF No. 5. He then moved this Court to grant leave to file an amended complaint on December 24, 2014, ECF No. 18, attaching a Proposed Amended Complaint to request, ECF No. 18-1. Macy's and Citigroup oppose these proposed amendments

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 23

because they fail to overcome any deficiencies in his original Complaint but simply insert additional state law citations that are either inapplicable or nonexistent. ECF No. 19 at 4-5. Before this Court could consider Mr. Scott's request to amend, he filed an Amended Complaint on January 16, 2015, which differs from both the original and proposed versions. ECF No. 24.

It is clear from this Court's review of both Mr. Scott's Proposed Amended and Amended Complaints that he will not be able to correct the deficiencies as addressed in this Order. Although he attempts to bolster his Complaint with additional citations to state statutes, which Defendants aptly note are either nonexistent or inapplicable, he alleges no additional allegations that form the basis for any plausible claims. Any additional amendments would clearly be futile. Accordingly, Mr. Scott's motion to amend (ECF No. 18) is **DENIED** as futile.

**E. Revocation of *In Forma Pauperis* Status**

Pursuant to 28 U.S.C. § 1915(a)(3), "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one, and good faith is demonstrated when an individual "seeks appellate review of any issue not frivolous." *See Coppedge v. United States,* 369 U.S. 438, 445 (1962). For purposes of 28 U.S.C. § 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 24

This Court finds that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact.  Accordingly, the Court hereby revokes Plaintiff's *in forma pauperis* status.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendants Macy's, Inc.'s and Citigroup, Inc.'s  Motions to Dismiss (ECF Nos. 10; 11) are **GRANTED**.

2.  Plaintiff's Motion to Strike Defendant's Motion to Dismiss and for Leave of Court to File an Amended Complaint (ECF No. 18) is **DENIED**.

3.  Plaintiff's Notice of Withdrawal of Experian Corporation as a Party and Dismissing All Claims Against Experian Corporation with Prejudice (ECF No. 25) is **GRANTED**.

4.  Plaintiff's *in forma pauperis* status (ECF No. 4) is **REVOKED**.

All claims and causes of action in this matter are hereby **DISMISSED** with prejudice for failure to state a claim.  The District Court Executive is hereby directed to enter this Order, enter **judgment** accordingly, provide copies to counsel and Plaintiff at his address of record, and **CLOSE** the file.

**DATED** January 30, 2015.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 25